Troyer *v.* The State, *ex rel.* Nichols.

---

No. 13,320.

TROYER *v.* THE STATE, EX REL. NICHOLS.

ARGUMENT OF COUNSEL.—*Misconduct.*—*Reversal of Judgment.*—A statement by counsel for the plaintiff, in his closing address, in effect telling the jury that the attorney for the defendant is occupying a position inconsistent with that previously contended for by him on the trial of a similar case, and which is also calculated to remind a juror in the case on trial, who was likewise a juror in the previous case referred to, that his own consistency might be involved in the verdict to be returned in the case under consideration, is such misconduct as will require the reversal of the judgment, unless the offending party shows affirmatively either that the matter was set right by the court or that it was harmless.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge, M. Bell, W. C. Purdum* and *B. C. H. Moon,* for appellant.

*J. M. Fippen, B. F. Harness* and *D. A. Woods,* for appellee.

MITCHELL, J.—The relatrix complained of Joseph E. Troyer, and charged that she had been delivered of a bastard child on the 3d day of September, 1885, of which the defendant was the putative father.

The trial in the circuit court resulted in a finding and judgment against the appellant.

The relatrix testified at the trial that the appellant was the father of the child of which she had been delivered, and that she was a domestic, residing in his family at the time it was begotten.

She testified further that illicit relations existed between herself and the appellant during a considerable portion of the time she resided in his family, and that the appellant was in the habit of leaving the bed and room in which he and his wife slept, and of coming to her bed in a room near by.

The appellant persistently and emphatically denied having had any improper relations with the relatrix at any time or place.    It appeared that there were but four apartments, and those on the same floor, in the house temporarily occupied by the appellant and his family and hired help.

The defence insisted that illicit intercourse could not have been had and carried on by the appellant with the relatrix in the manner and under the circumstances detailed by her, without detection owing to the proximity of the appellant's wife and other members of the family.    There was reasonable ground to suspect the truth of the relatrix's story.    A bill of exceptions recites that the plaintiff's counsel, during his closing argument to the jury, used the following language :

" I well recollect how Mr. Bell told a jury of Howard county, when he was attorney for the plaintiff, how Joshua Freeman got up out of his bed and slipped into the room of Mary Sleeth."    This statement was objected to, but the court seems not to have given the objection any attention.

The bill of exceptions shows further, that another bastardy suit had been tried at the same term of court, in which Mary Sleeth appeared as the relatrix, and Joshua Freeman as defendant, and that a Mr. Lindley, one of the jurors in the case on trial, was also a juror in the case referred to, and that the Mr. Bell referred to by counsel was the attorney for the relatrix in the former case, and was one of the defendant's attorneys in the present case.    It also appeared that counsel made the statement above set out in illustration of

how the defendant, in the case on trial, went from the room occupied by him to that of the relatrix.

The reference made by plaintiff's counsel to the line of argument pursued by counsel for the defendant in a similar case previously tried, was certainly improper, and while under ordinary circumstances it might have been harmless, it was liable to be injurious under the circumstances disclosed in the present case. It was, in effect, saying to the jury that counsel for the defence, in the case on trial, was occupying a position inconsistent with that contended for by him on the trial of a previous case. The worst feature of the statement, however, was, that it was well calculated to remind juror Lindley of the result arrived at in the case referred to, and to impress upon him that his own consistency might be involved in the verdict to be returned, or conclusion to be arrived at, in the case then under consideration. Lindley, as well as the other jurors, should have been left free to decide the case in hearing without any reference to the evidence or argument in another similar case. The case was close and doubtful on the evidence as it stood. The improper statement of counsel, made seemingly with the approbation of the court, may have turned the scale.

When counsel abandon the evidence and the wide range of argument and illustration which it affords, and seek by a side wind to bridge over or supply what may seem a close point, by bringing forward matter not in evidence, and commenting upon it, they take the hazard of showing that such conduct was fully set right by the court, or that it was harmless. *Nelson* v. *Welch, ante,* p. 270.

That has not been done in the present case—rather the bill of exceptions discloses other violations of the rules of debate, which need not be referred to, which should have received the attention of the court.

The judgment is reversed, with costs.

Filed June 22, 1888.