## No. 10,428.

### THE STATE OF LOUISIANA VS. LOUIS CLAIRE AND JOHN GIBSON.

The possible error of a trial judge who excuses a juror who has stated that he had a prejudice in favor of the accused, and refuses the accused to cross-examine him, on his *voir dire*, affords of itself no legal ground of complaint to the accused, on appeal.

The refusal of a trial judge to permit a witness to answer a question, the purport of which was, whether wounds received by an accused had been inflicted in a particular way — will not be interfered with, where the witness had previously stated that he did not know how the wounds had been inflicted and that he was not an expert.

A witness who has testified in a particular manner, in his first examination and who is sought to be contradicted by the defense, can be heard in rebuttal to testify as to a new matter brought out, in the attempt to contradict or impeach him, where the witness had not testified on that subject when examined in chief.

At any rate, the objection would go, if the testimony was cumulative only, and thus superfluous to the effect and not to the admissibility.

APPEAL from the Criminal District Court for the Parish of Orleans. *Marr*, J.

_____

*Walter H. Rogers*, Attorney General, for the State, Appellee.

_____

*J. H. Ferguson* and *Jas. O. Walker* for defendants and Appellants.

_____

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The defendants were prosecuted for murder, tried, convicted without capital punishment and sentenced to hard labor for life.

The record contains three bills of exceptions and a motion for a new trial.

### I.

The first bill is taken to the refusal of the trial judge, to allow to the accused to cross-examine a juror on his *voir dire*.

It appears that, on direct examination by the State, the juror having declared that he had a prejudice in favor of the accused, the Attorney General moved that he be rejected and the court did so, declaring him incompetent.

After the ruling, "the attorney for the defense sought to cross-examine the juror as to grounds he had for his opinion formed and expressed and his bias and prejudice for the accused.   The counsel for the State objected to this form of procedure and the court sustained the objection."

The accused reserved a bill and insists that it is well taken.

The accused does not charge that he has sustained any injury by the ruling, or that he *will* derive any benefit by the remanding of the case.

It is quite likely, that the trial judge should have allowed counsel for the accused to cross-examine the juror and that he erred in declining that privilege; but how can the accused be benefitted by the commission of the error ?

If it be true, on the one hand, that, had the counsel been permitted to cross-examine, the juror would have answered so as to show that the prejudice on his mind was not such as to prevent him, on proper proof, to find a verdict against the accused, it is equally so, that he might have testified to the reverse.

In either case, the district judge *could* have ruled that the juror was incompetent and rejected him, to be sure improperly in the first, properly in the second, instance.

Of what useful purpose would it be for the accused to complain here of the improper rejection of the juror ?

In State vs. Shields, 33 Ann. 1410, we said :

" Exception is taken to the action of the court in excusing a juryman for a cause which the defendant contends was not sufficient, under the law. Admitting the cause was not sufficient, the judge exercised his discretion in determining the question and his error in such matter, would afford no ground for relief."

In support, many authorities are there quoted.

In the more recent case of State vs. Creech, 38 Ann. 480, this court said :

" It is no longer an open question, in criminal jurisprudence, that the rejecting of a juror by the trial judge, even if erroneous, affords of itself no legal ground of complaint to the accused."

The ruling in 33 Ann. 1410 was thus formally affirmed.

Surely, we could not remand the case to have it put in *statu quo*, so as to have the juror brought forward and cross-examined, particularly as there is no certainty that by his answers, he would certainly be admitted as a juror in the case.

## II.

The second bill is to the refusal of the trial judge to allow a witness, on the stand, to be asked: " Whether or not, certain wounds on the face and person of Claire (one of the accused), could have been inflicted by the use of an oyster shell, in the hands of a third party, beating him therewith."

The putting and answering of the question, was on objection by the State, refused by the court.

The accused contend that to be an expert, it is not necessary to have graduated as a physician and surgeon, and that, as it was proved that the witness had had nine years' experience in the treatment of wounds and bruises, he may rightly be termed an *expert.*

The court had permitted the witness to answer fully and minutely, as to all the wounds and bruises he examined and saw and to so describe them.

It excluded the question, on the ground, that the witness had already sworn, he could not tell how the wounds were caused and shown, by his testimony, that he was not an *expert.*

Surely after such statement by the witness, the court was right in not permitting him to be subject to further examination.

### III.

The third bill of exception relates to the ruling of the trial judge, permitting a State witness, whom the accused had undertaken to contradict, to be heard in rebuttal.

It appears that the witness had stated when first examined, that "the first shot was fired behind the lunch counter," and that a witness for the accused and one of the accused, undertook to contradict him by stating, that the first shot was fired from the front of the street, towards St. Charles street, and not fired at Mealey; further, that afterwards, the State witness was asked, whether it was true that the first shot was fired as just stated.

The district judge says, that the matter testified to by Claire was direct and *new* matter, and the State witness, although he had been examined as to the facts of the case, as a witness for the State, was after a statement of the particular fact testified to by Claire, called in rebuttal and asked *only* as to said particular matter. The court annulled the objection and the witness answered "*no,*" and stated where the first shot was fired.

There is nothing to show that the witness, in his first examination, had testified in the way he did, when called back. He could, therefore, be brought again to the stand to testify as to a *new* matter, in contradiction of what might have been said counter, or in explanation of his own previous declaration.

At any rate, even his second testimony was merely cumulative, it could only be considered as superfluous. The objection went more to the effect than to the admissibility.

It is hardly necessary to notice the motion for a new trial, further than by saying that it relates to matters within the province of the jury and not that of this court.

The [accused themselves say nothing about it and they dispense the court from further remark.

Judgment affirmed.